IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Estate of Brianna Lynn Beland, by and through Katherine Odete Hayes, as Personal Representative,<br><br>Plaintiff,<br><br>v.<br><br>Charleston County Sherriff's Office, *et al.*,<br><br>Defendants. | C/A No. 1:20-cv-3006-SAL<br><br><br>**OPINION AND ORDER** |

This matter is before the Court for review of the October 12, 2021 Report and Recommendation ("Report") of United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 65.] For the reasons outlined herein, the court adopts the Report in its entirety.

## BACKGROUND

Plaintiff Katherine Odete Hayes, as the Personal Representative of the Estate of Brianna Lynn Beland ("Plaintiff"), filed this action alleging constitutional violations as well as two state law causes of action. The claims concern the medical care that Brianna Lynn Beland ("Beland") received at the Sheriff Al Cannon Detention Center (the "detention center") while experiencing severe symptoms of opioid withdrawal, resulting in her death on August 19, 2019.[1] The specific facts are fully set forth in the Report, and this court will not repeat them here.

---

[1] On August 18, 2017 at 10:51 p.m., Beland was found unresponsive at the detention center. Emergency Medical Services ("EMS") arrived around 11:05 p.m. and transported Beland to the hospital, where she was pronounced dead at 12:04 a.m. on August 19, 2017. Accordingly, references in this Order to the night of Beland's death refer to August 18, 2017.

1

On July 15, 2021, Deputy David Hassan ("Deputy Hassan") and the Charleston County Sheriff's Office (the "CCSO") (together the "CCSO Defendants") filed a motion for summary judgment.[2]  [ECF No. 41.]  On July 24, 2021, the Carolina Center for Occupational Health, LLC ("CCOH") and all individually named CCOH employees (collectively the "CCOH Defendants") filed a motion for summary judgment.  [ECF No. 42.]  All Defendants named in this action were included in either the CCSO Defendants' Motion or the CCOH Defendants' Motion.  Plaintiff opposed both motions.  *See* [ECF Nos. 47, 51.]

In the Report, the Magistrate Judge recommends that this court grant the CCSO Defendants' motion for summary judgment and grant in part and deny in part the CCOH Defendants' motion for summary judgment—allowing Plaintiff's § 1983 cause of action to proceed as to Defendants Angela Rutledge, RN ("Nurse Rutledge") and Rosemary Jordan, RN ("Nurse Jordan") and Plaintiff's state causes of action to proceed against all CCOH Defendants.  [ECF No. 65 at 53.]  The Magistrate Judge also ruled on several non-dispositive motions.  She granted Defendants' motions to strike the affidavit of expert Gayle Galan M.D., ECF Nos. 48, 59, and denied Plaintiff's motion for an extension of time to file a supplemental Rule 26 expert report, ECF No. 50.

Plaintiff timely filed objections to the Report and the non-dispositive rulings.  [ECF No. 66.]  Defendants did not file objections.[3]  The CCSO Defendants and CCOH Defendants replied to Plaintiff's objections, ECF Nos. 67, 68, and the matter is now ripe for consideration by this court.

---

[2] This motion was filed on behalf of several other deputies and employees of the CCSO who have since been voluntarily dismissed from this action.  In response to the CCSO Defendants' motion for summary judgment, Plaintiff informed the court that she is proceeding solely against Hassan and the CCSO.  *See* [ECF No. 47 at 1 n.1.]

[3] To the extent that the CCOH Defendants attempt to include objections to the Report in their Reply to Plaintiff's Objections, ECF No. 68, their objections are untimely.  *See Ham v. Williams*, 790 F. App'x, 543, 544 (4th Cir.) (unpublished) ("The timely filing of specific objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of that recommendation when the parties have been warned of the consequences of noncompliance.")

**STANDARDS OF REVIEW**

**I. Review of a Magistrate Judge's Order on a Non-Dispositive Motion.**

Pursuant to Federal Rule of Civil Procedure 72(a), when a party objects to a magistrate judge's order on a non-dispositive matter, the court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "'An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed,' and '[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *King v. Marriott Int'l, Inc.,* No. 9:05-cv-1774, 2006 WL 2092592, at *3 (D.S.C. July 26, 2006) (quoting *Tompkins v. R.J. Reynolds Tobacco Corp.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)).

**II. Review of a Magistrate Judge's Report.**

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. &*

---

The parties were warned in a notice attached to the Report that failure to timely file specific written objections would result in waiver of the right to appeal to the District Court. [ECF No. 65 at 55 (citations omitted).] The parties were required to file objections to the Report by October 26, 2021, and neither group of Defendants filed objections by this date nor asked for an extension of time in which to do so. The CCOH Defendants' request for this court to reject the Report's recommendations is raised for the first time in their reply to Plaintiff's objections and is thus untimely filed—two weeks after the Defendant's deadline to file objections ran. Nevertheless, the arguments raised in the Reply would not have altered the instant decision because Defendants fail to point the court to specific errors in the Report's proposed findings and instead, "raise and restate each argument set forth in their motion for summary judgment." [ECF No. 68 at 5.]

*Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report, this court is not required to provide an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for clear error." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

Plaintiff asserts causes of action against both the CCSO and CCOH Defendants for: (1) violation of Beland's Eight and Fourteenth Amendment rights under 42 U.S.C. § 1983, ECF No. 22 ¶¶ 65–71, (2) negligence/gross negligence/survival, *id.* ¶¶ 72–75, and (3) wrongful death, *id.* ¶¶ 76–80. Below, the court will address Plaintiff's objection to the Report's ruling on Defendants'

4

non-dispositive motions to strike, as well as Plaintiff's objections concerning the Report's recommendations as to both groups of Defendants.

I. **Non-Dispositive Ruling.**

The court first turns to Plaintiff's objection to the portion of the Report ruling on the CCSO and CCOH Defendants' motions to strike the affidavit of Gale Galan, M.D (the "Galan Affidavit"), ECF No. 48, 59. Defendants' motions stemmed from Plaintiff's untimely filing of the Galan Affidavit in her response in opposition to summary judgment. *See id.*; ECF No. 47-40. In the Report, the Magistrate Judge found that Plaintiff failed to show "good cause" to amend the court's scheduling order to allow the Galan Affidavit in accordance with Fed. R. Civ. P. 16, and thus granted Defendants' motions to strike. *See* [ECF No. 65 at 24–29.] The Magistrate Judge's decision was an order on Defendants' non-dispositive pre-trial motions, made in accordance with 28 U.S.C. § 636(b)(1)(A)—not a recommendation for this court to adopt or reject. Therefore, pursuant to Federal Rule of Civil Procedure 72(a), this court reviews only whether the Magistrate Judge's order granting Defendants' motions to strike was clearly erroneous or contrary to law.

Plaintiff argues that the Magistrate Judge's decision was an "abuse of discretion" because "good cause" was shown to amend the scheduling order. *See* [ECF No. 66 at 15.] Plaintiff asserts that the depositions of Deputy Hassan and Nurses Rutledge and Flynn, taken after the deadline for expert reports had passed, revealed for the first time that their conduct may have deviated from the standard of care. *See id.* at 15–16. However, the Magistrate Judge explained that, even if the Galan Affidavit were based on information not provided to Plaintiff until certain depositions were conducted, the delay was not justified. *See* [ECF No. 65 at 26 ("Plaintiff does not provide any explanation of why it took 7 months after Hassan's deposition or why it took 6 months after Rutledge and Flynn's depositions for Galan to provide this affidavit.")]. Additionally, the

5

Magistrate Judge found that Defendants would be prejudiced by re-opening discovery after both groups of Defendants had fully briefed and filed their motions for summary judgment. *Id.* at 27. The Magistrate Judge rejected Plaintiff's argument that Galan's affidavit was merely a "supplementation" of her original expert report because the affidavit identified "a new cause of death based on similar information provided prior to the deposition in question." *Id.* at 28 (citing *Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013) ("Accordingly, '[c]ourts distinguish true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report.'")).

Plaintiff has not identified, and this court does not find, any portions of the Magistrate Judge's order on Defendants' motions to strike that are clearly erroneous or contrary to law. As such, Plaintiff's objection to the Magistrate Judge's ruling is overruled, and the Galan Affidavit remains excluded from evidence.[4]

## II. Recommendations regarding the CCSO Defendants.

The Report recommends granting summary judgment as to the CCSO Defendants on Plaintiff's § 1983 cause of action because Plaintiff failed to show that Deputy Hassan was deliberately indifferent to Beland's condition on the night of August 18, 2017, or that any delay on Hassan's part in reporting Beland's condition to the nurse on duty exacerbated Beland's injury or unnecessarily prolonged her pain. [ECF No. 65 at 35–37.] The Report also recommended granting summary judgment on Plaintiff's state causes of action for gross negligence, finding insufficient evidence that Deputy Hassan failed to exercise even a slight care under the circumstances. *Id.* at

---

[4] Accordingly, any further argument Plaintiff makes in her Objections referencing the Galan Affidavit will not be considered by the court.

35–39.

In her objections, Plaintiff argues that the Report's recommendation was in error because the Magistrate Judge did not consider Plaintiff's Exhibit 34, a video of the hallway detention center from 10:18 p.m. to 10:51 p.m. [ECF No. 66 at 2–5.] Plaintiff asks the court to revisit the recommendations regarding the deliberate indifference and gross negligence of Deputy Hassan in light of this footage. *See id*. at 2–6. The court will address the admissibility of this video, as well as its impact on the Report's recommendations regarding the CCSO Defendants.

### A. Admission of Hallway Video.

Plaintiff maintains that the Magistrate Judge was sent a courtesy copy of Plaintiff's Exhibit 34, a disc with video footage showing the back hallway of the detention center from 10:15 p.m. to 10:51 p.m. on the night of Beland's death. [ECF No. 66 at 4.] However, the Report attested that "the hallway video provided to the court by Plaintiff only records what occurred from 10:51 p.m. to 11:30 p.m." [ECF No. 65 at 18 n.15.] The Report, therefore, only considered the video footage beginning at 10:51 p.m. Defendants argue that Plaintiff did not properly submit the evidence to the Magistrate Judge, and therefore, this court should not consider the evidence now. [ECF No. 67 at 56.]

The court need not determine whether Plaintiff properly submitted the exhibit in the record before the Magistrate because Federal Rule of Civil Procedure 72(b)(3) empowers the court to receive "further evidence" after the Magistrate Judge has submitted her recommendations. Pursuant to Rule 72(b)(3), the court accepts the video footage offered by Plaintiff of the detention center hallway from 10:15 p.m. to 10:51 p.m.

### B. Recommendation of Summary Judgment.

Plaintiff argues that the hallway video from 10:18 p.m. to 10:51 p.m. ("the video"), supports

7

denial of summary judgment on Plaintiff's deliberate indifference and gross negligence claims against Deputy Hassan, the infirmary custody officer on the night of Beland's death. In reviewing Plaintiff's objections, the court considers *de novo* whether the video, alone or in combination with any other evidence in the record, gives rise to a genuine dispute over the claims.

### i. Deliberate Indifference.

Plaintiff objects to the Report's finding that the evidence presented was insufficient to create a genuine dispute of material fact as to whether Deputy Hassan's delay in reporting Beland's condition constituted deliberate indifference. In its analysis, the Report pointed to evidence that there was a delay of less than fifteen-minutes from when Deputy Hassan checked on Beland and when he notified Nurse Jordan that Beland had vomited a reddish-brown liquid. *See* [ECF No. 64 at 35.] The Report further pointed out the absence of evidence that Deputy Hassan was responsible for the delay from when Nurse Jordan was notified to when Nurse Rutledge checked on Beland around 10:51 p.m. *See id.* The Report found no evidence that Deputy Hassan knew, or had reason to know, that finishing his rounds before updating Nurse Jordan was an inadequate response to a serious medical issue. *Id.* at 35–37. Nor did the Report find evidence that the ensuing delay in reporting Beland's condition exacerbated her injury or unnecessarily prolonged her pain. *Id.* at 37. Further, the Report found no evidence that informing the nurse sooner would have enabled Beland to be seen quicker in light of the testimony that Nurse Rutledge was busy with other patients at the time. *Id.* at 37.

Plaintiff argues that when the video is considered, it shows "that approximately 31 minutes passed from the time Deputy Hassan discovered the medical emergency and the time he returned inside the cell with Nurse Rutledge – and that he showed an astonishing lack of urgency after seeing the blood in Ms. Beland's cell at 10:18 p.m." [ECF No. 66 at 3.] But the video is not as

8

informative as Plaintiff contends. To start, the 31-minute gap shown in the video aligns with Deputy Hassan's testimony that up to 30 minutes elapsed between Deputy Hassan asking Beland if she had thrown up and Beland actually being seen by a nurse. *See* [ECF No. 65 at 16–17 (citing ECF No. 51-31).] Second, and most important, the video does not show at what point in time Deputy Hassan notified Nurse Jordan that Beland had vomited a reddish-brown liquid, which is the delay on which the Report focused. Nurse Jordan cannot be seen on the video at all. Plaintiff has offered no evidence demonstrating that Deputy Hassan took longer than 15 minutes to report Beland's condition to Nurse Jordan.

Nor does the video show the inside of Beland's cell or reveal what Deputy Hassan saw when he opened the door to her cell around 10:18 p.m. Plaintiff's characterization of Deputy Hassan "seeing Ms. Beland near death with blood running over the floor at 10:18 p.m." is not supported by the video nor the record. [ECF No. 66 at 2.] Instead, Deputy Hassan's notes and testimony indicate that Beland was conscious, sitting on the toilet, and was responsive to his question as to whether she threw up, nodding and pointing to a reddish-brown liquid on the ground, which Deputy Hassan identified *after* the incident as blood. *See* [ECF No. 65 at 16–17.] Deputy Hassan is not a medical professional, and there is no evidence that Deputy Hassan perceived that Beland required emergency care when he saw her at 10:18 p.m. or that finishing his round before updating Nurse Jordan as to Beland's state was an inadequate or inappropriate response to her medical needs. *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) ("[U]nder the deliberate indifference standard, the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his actions were inappropriate in light of that risk." (internal quotation marks omitted) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("Even subjective knowledge of

[the plaintiff's] medical needs is not enough; the officers must have actually known that their response was inadequate to address those needs."). The court also rejects Plaintiff's argument that Deputy Hassan's failure to check on Beland again when walking past her room around 10:41 p.m. constitutes deliberate difference to a serious medical need, given the evidence that he had already taken action and reported her condition to Nurse Jordan at that point, and he was unaware of any ongoing emergency. Furthermore, Deputy Hassan was acting as the custody officer in the infirmary, not as medical personnel. No evidence exists that he had further responsibility to Beland in the time that elapsed between Deputy Hassan's report to Nurse Jordan and Nurse Rutledge going to check on Beland—let alone a responsibility that he disregarded with known risk to Beland's health. *See* [ECF No. 65 at 35.]

Finally, Plaintiff argues that the video demonstrates that Deputy Hassan did not inform Nurse Rutledge as to Beland's condition until 10:49 p.m. when the video shows Nurse Rutledge looking in Beland's window. The video, however, does not show or even suggest at what point in time Nurse Rutledge was informed of Beland's condition. Nor does the court find this inquiry relevant. Deputy Hassan testified that he informed the other nurse on call, Nurse Jordan, of Beland's condition following the round during which he discovered the condition. Plaintiff has provided no evidence that Deputy Hassan was required to report Beland's condition to *both nurses* on duty or that he delayed informing either nurse in conscious disregard to a known risk to Beland's health. *See Anderson v. Kingsley, 877 F.3d 539, 546 (4th Cir. 2017)* ("'[D]eliberate indifference" requires proof that the prison official knew that the inmate faced "a substantial risk of serious harm" but responded by "consciously disregard[ing]" that known risk (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 839 (U.S. 1994))).

In sum, the court finds that no reasonable juror could infer that Deputy Hassan knew Beland

was at a "substantial risk of harm" given her condition at 10:18 p.m., or that he recognized that finishing his round before informing Nurse Jordan was inappropriate action in light of such a risk. Accordingly, the court adopts the Report's recommendation to grant the CCOH Defendants' motion for summary judgment on Plaintiff's § 1983 deliberate indifference claim.

### ii. Gross Negligence.

Though Plaintiff spends the bulk of her objections arguing why Deputy Hassan's conduct rose to the level of deliberate indifference, she briefly mentions that the video also provides compelling evidence that Deputy Hassan was grossly negligent. *See* [ECF No. 66 at 6.] The Report found that Plaintiff failed to demonstrate "that Hassan was intentionally conscious that he failed to do something it was incumbent for him to do, that he failed to exercise the slightest care, or that he failed to provide care necessary under the circumstances." [ECF No. 65 at 39 (citing *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000).]

The court agrees with the Report's finding, and the video footage does not change the analysis. The video demonstrates only that Deputy Hassan opened Beland's cell door at 10:18 p.m., and he walked down the back hallway around 10:41 p.m. but did not open Beland's cell door again until 10:51 p.m. when he was with Nurse Rutledge. The court is left with Deputy Hassan's testimony to fill in the gaps of what took place off-camera. Deputy Hassan testified that he notified Nurse Jordan at the end of his round that Beland had moved to the toilet, pressed the red call button, and thrown up a reddish-brown liquid. The Report correctly found that the only reasonable inference that can be drawn in this case is that Deputy Hassan exercised at least slight care, and that nothing in the record supports Plaintiff's argument that it was "incumbent" upon Deputy Hassan to immediately notify Nurse Jordan that Plaintiff had vomited a reddish-brown liquid as opposed to waiting until the end of his round. As a result, the court adopts the Report's recommendation to

11

grant summary judgment on Defendants' gross negligence claim as to CCSO Defendants.

## III. Recommendations regarding the CCOH Defendants.

Plaintiff objects to the Report's recommendation to grant summary judgment on her § 1983 deliberate indifference claims against all CCOH Defendants except for Nurses Jordan and Rutledge. Plaintiff argues that summary judgment should be denied as to all individual CCOH Defendants, alleging in general terms that the CCOH Defendants knew of and disregarded an excessive risk to Beland by adopting a "wait and see" approach of regarding her care or by providing improper treatment. [ECF No. 66 at 19-20.] However, this argument, like Plaintiff's argument to the Magistrate Judge, fails to present evidence as to the deliberate indifference of specifically named Defendants. To the extent that Plaintiff's arguments raise objections as to Theodolph Jacobs, M.D. ("Dr. Jacobs"), the medical director of CCOH, and Nurses Rachael Masullo ("Nurse Masullo"), Meghan Flynn ("Nurse Flynn"),[5] and Deborah Newman ("Nurse Newman"), *see* ECF No. 66 at 19, 20, the court considers Plaintiff's arguments below.

### A. Deliberate Indifference: Dr. Jacobs.

Plaintiff specifically names Dr. Jacobs in her objections but does not specify how he acted with deliberate indifference to Beland's medical needs, pointing only to the Report's finding that Dr. Jacobs diagnosed Beland with opioid withdrawal and the Report's agreement that the withdrawal qualifies as a serious medical need under the deliberate indifference test. *See id.* at 19. Plaintiff fails to point to evidence that Dr. Jacobs knowingly disregarded an excessive risk to Beland's safety or health. *See Farmer v. Brennan*, 511 U.S. at 837 (1994). Instead, the record reflects that after Beland passed out in the recreation yard of the detention center on August 17, 2017, Dr.

---

[5] Plaintiff names Nurse Megan Marsillo, whose name is now Megan Flynn. *See* [ECF No. 53-6.] The Report refers to her as Nurse Flynn, which is how this court will identify her. *See* [ECF No. 65 at 3 n.3.]

Jacobs ordered that she be admitted to the infirmary for observation for four hours and noted that Beland was withdrawing from drug use. *See* [ECF No. 43-2 at 22–23.] Dr. Jacobs also wrote a prescription for Beland to receive Phenergan, as well as Gatorade and an EKG test. *Id.* at 27, 42. The Report finds no evidence that demonstrates that Dr. Jacobs was deliberately indifferent to Beland's medical needs and overrules Plaintiff's objection.

### B.  Deliberate Indifference: Nurses Masullo, Flynn, Newman, Rutledge and Jordan.

Plaintiff argues that Nurses Masullo, Flynn, and Newman, along with Nurses Rutledge and Jordan, acted with deliberate indifference when they "failed to take proper life saving steps" in response to Beland's emergency condition at 10:51 p.m. on August 18, 2017. [ECF No. 66 at 20.] However, the record reflects that after Nurse Rutledge found Beland unresponsive at 10:51 p.m. she called an emergency code and started chest compressions. *See* [ECF No. 65 at 18–19 (citing ECF Nos. 42-6, 42-7, 42-8, 42-9, 42-10).] Shortly after, Nurses Masullo, Flynn, Newman, and Jordan arrived with supplies. *Id.* at 18. Nurse Rutledge rotated from chest compressions to providing breaths and using suction on Beland's airways. *Id.* She also shocked Beland with a defibrillator before re-starting CPR. *Id.* Using suction, Nurse Rutledge was able to remove some of the "coffee-ground emesis" from Beland's airways. *Id.* at 19. The fact that the EMS later suctioned an additional 600ml from Beland's airways does not evidence that Nurse Rutledge's attempt was improper nor that her efforts were made with deliberate indifference. In sum, nothing in the record supports Plaintiff's argument that the attempted life-saving care by Rutledge or the other nurses present in the room after 10:51 p.m. was improper or rises to the level of deliberate indifference to a serious medical need. Plaintiff's objection, is therefore, overruled.

**CONCLUSION**

After a thorough review of the Report, the applicable law, and the record of this case, the Court adopts the Report, ECF No. 65, in its entirety and hereby incorporates the Report by reference. As a result, the CCSO Defendants' motion for summary judgment, ECF No. 41, is **GRANTED**, and the CCOH Defendants' motion for summary judgment, ECF No. 42, is **GRANTED** in part and **DENIED** in part. Plaintiff's first cause of action for deliberate indifference shall proceed to trial only against Defendants Jordan and Rutledge, and Plaintiff's second and third causes of action for state-claims sounding in negligence shall proceed to trial against all CCOH Defendants.

**IT IS SO ORDERED.**

February 2, 2022
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge